DECISION AND JUDGMENT ENTRY
{¶ 1} Tonya M. Taylor ("Appellant") appeals her conviction in the Circleville Municipal Court for operating a motor vehicle under the influence of alcohol ("OMVI") in violation of R.C.4511.19(A)(3).[1] Appellant contends the trial court erred in failing to suppress the results of her alcohol blood test; she alleges that the search warrant permitting the test was issued under conditions violative of the Fourth andFourteenth Amendments of the United States and Ohio Constitutions. Specifically, Appellant contends that the search warrant is invalid because it was not issued by a neutral and detached magistrate. Because we find that the issuing judge was neutral and detached, and had not wholly abandoned his judicial role, we affirm the judgment of the trial court.
 {¶ 2} On March 28, 2003, Trooper Caplinger (Trooper) of the Ohio State Highway Patrol observed Appellant operating a motor vehicle traveling at a speed in excess of the posted speed limit on U.S. Route 23 in Pickaway County. He also noted that Appellant's vehicle was weaving within its own lane of travel and almost ran a red light. Upon stopping her vehicle, the Trooper made contact and observed signs that Appellant was under the influence of alcohol, including an odor of alcoholic beverage on or about her person and bloodshot, glassy eyes. He then asked Appellant to perform the standard field sobriety tests and ultimately came to the conclusion she was under the influence of alcohol and placed her under arrest for operating a vehicle under the influence in violation of R.C. 4511.19(A)(1). Appellant was transported to the Circleville Police Department, where she reviewed Ohio Bureau of Motor Vehicles Implied Consent Form 2255. Appellant refused to submit to a chemical analysis of her urine.
 {¶ 3} The Circleville Municipal Court has developed a protocol for the issuance of a search warrant for the seizure of blood samples for forensic analysis in cases in which the offender refuses a chemical test and the offense involves an injury or fatal crash, evidence of Schedule 1 or Schedule 2 drugs, serious property damage, or a repeat impaired driving offender. Because Appellant had two prior convictions for operating a motor vehicle while under the influence, she was advised that pursuant to Circleville Municipal Court protocol, a search warrant would be obtained to collect a sample of her blood. Appellant was subsequently transported to Berger Hospital for such testing. At this time, Judge Adkins of the Circleville Municipal Court was contacted so that he could issue a search warrant upon the determination of probable cause for the search.
 {¶ 4} Pursuant to the court's standard procedure for issuing such a search warrant, Judge Adkins traveled to the hospital and reviewed the facts of the case with the Trooper at the nurses' station, outside of the presence of Appellant. After obtaining the necessary background information and determining that probable cause existed for the issuance of a search warrant, Judge Adkins completed the Application for Emergency Search Warrant Affidavit, to which Trooper Caplinger signed and swore.
 {¶ 5} Based on this affidavit, Judge Adkins issued a search warrant to Berger Hospital system, its agents, and employees to cause the search and seizure of Appellant to obtain a blood sample for analysis. Pursuant to the search warrant, a phlebotomist obtained a blood sample from Appellant using a sealed specimen kit provided by the Ohio State Highway Patrol. After being properly sealed and labeled, the blood specimen was sent to the Ohio State Highway Patrol Lab for testing. The results of the test indicated that Appellant's blood alcohol level was 0.19%.
 {¶ 6} Appellant was subsequently charged with OMVI under R.C.4511.19(A)(1), speed in violation of R.C. 4511.21(D)(1), and obstructing official business in violation of R.C. 2921.31. Appellant filed a motion to suppress the results of the blood alcohol test based on the procedures for the issuance of a search warrant and the withdrawal of Appellant's blood for forensic analysis. On October 27, 2004, the state dismissed the R.C.4511.19(A)(1) count and Appellant entered a no contest plea to one count of R.C. 4511.19(A)(3), intending to appeal the conviction on the basis of the unlawful search and seizure of her blood.
 {¶ 7} On May 2, 2005, the parties signed a Stipulation and Order on Sentencing, which the trial court approved. The trial court entered a finding of guilty to the charge and sentenced Appellant accordingly. Appellant now appeals, advancing one assignment of error:
 {¶ 8} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE BLOOD DRAW AND TESTING DONE UNDER THE INVALID SEARCH WARRANT ISSUED BY THE TRIAL COURT FOR THE REASON THAT THE SEARCH WARRANT WAS ISSUED UNDER CONDITIONS WHICH VIOLATED THE FOURTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION MAKING THE SEARCH AND SEIZURE UNREASONABLE."
 {¶ 9} Appellate review of a decision on a motion to suppress presents mixed questions of law and fact. State v. McNamara
(1997), 124 Ohio App.3d 706, 710, citing United States v.Martinez (C.A.11, 1992), 949 F.2d 1117, 1119. In a motion to suppress, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. See, e.g., State v. Mills (1992),62 Ohio St.3d 357, 366, 582 N.E.2d 972, citing State v. Fanning
(1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583; see, also, State v.Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594, 621 N.E.2d 726. Accepting those facts are true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Ornelas v. United States (1996), 517 U.S. 690,697, 116 S.Ct. 1657, 134 L.Ed.2d 911; State v. Klein (1991),73 Ohio App.3d 486, 488, 597 N.E.2d 1141; Williams, Guysinger,
supra.
 {¶ 10} In the case sub judice, the Appellant and the State of Ohio ("Appellee") entered into a stipulation of facts for the purpose of the hearing. Therefore, our role is limited to conducting a de novo review of the trial court's application of the law to these stipulated facts. See State v. Anderson
(1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034.
 {¶ 11} Appellate court analysis of the propriety of a court's decision to issue a search warrant is two-pronged. First, an appellate court must determine whether the magistrate "had a `substantial basis' for concluding that probable cause existed."Illinois v. Gates (1983), 462 U.S.213, 238-39, 103 S.Ct. 2317,76 L.Ed.2d 527. The magistrate is bound to determine whether sufficient probable cause exists under the totality of the circumstances standard, which takes into account "whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. An appellate court may not substitute its own judgment for that of the issuing magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which the reviewing court would issue the search warrant; rather, a reviewing court "should accord great deference to the magistrate's determination of probable cause and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." State v. George
(1989), 45 Ohio St.3d 325, 330, 544 N.E.2d 640, citing Gates,
supra, at 237, fn. 10.
 {¶ 12} Here, the circumstances sworn to by the Trooper in the search warrant affidavit clearly demonstrate there was a fair probability that evidence of driving under the influence would be found in a sample of the Appellant's blood. He indicated in the affidavit that Appellant was stopped for "observed erratic driving" and that she "appeared impaired." Her pupils were "extremely dilated." Upon contact with the Appellant, the Trooper observed a "slight odor of an alcohol[-]based beverage on the breath of the offender and distinct from the vehicle or other passengers." He also noted "glassy, bloodshot eyes", "unsteadiness on her feet", "slurred speech", and "mood swings." Further, the affidavit stated Appellant admitted to consuming drugs before operating the vehicle. A horizontal gaze nystagmus test, as noted in the affidavit, demonstrated Appellant showed six clues of being impaired. From these notations, it appears that Judge Adkins' determination of probable cause was soundly warranted in this case. Therefore, the issuance of the search warrant has met the first prong of the test.
 {¶ 13} Second, a reviewing court must ensure that the warrant was authorized by a neutral and detached magistrate. See Johnsonv. United States (1948), 333 U.S.10, 14, 68 S.Ct. 367,92 L.Ed. 436; see also LO-JI Sales, Inc. v. New York (1979),442 U.S. 319, 326, 99 S.Ct. 2319, 60 L.Ed.2d 920. This requirement exists to ensure that the magistrate issuing the warrant has no direct, personal, or substantial pecuniary interest in his or her decision to issue the warrant. See Connally v. Georgia (1977), 429 U.S.245, 250, 97 S.Ct. 546, 50 L.Ed.2d 444. The neutral and detached magistrate characterization requires, amongst other qualities, "severance and disengagement from activities of law enforcement." Shadwick v. City of Tampa (1972), 407 U.S. 345,350, 92 S.Ct 2119, 32 L.Ed.2d 783. A neutral and detached magistrate, however, does not lose his character as such "merely because he leaves his regular office in order to make himself readily available to law enforcement officers who may wish to seek the issuance of warrants by him. LO-JI Sales, Inc.,442 U.S. at 328, fn.6.
 {¶ 14} In establishing the foundation for the meaning of "neutral and detached," the United States Supreme Court held inCoolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022,29 L.Ed.2d 564, that an individual actively involved in gathering incriminating evidence against the accused was not neutral and detached for the purpose of issuing a search warrant. In LO-JISales, Inc. v. New York, supra, the United States Supreme Court determined that a town justice who went with police investigators during the search of an adult bookstore in order to fill in a blank warrant with the list of books, films, and magazines considered to be obscene was not neutral and detached, as he "allowed himself to become a member, if not the leader, of the search party which was essentially a police operation." Id. at 327. Once in the store, the town justice in LO-JI did a generalized review of the materials present and then added to the search warrant other items which he considered obscene; in addition, he ordered officers to seize all items "similar" to those he personally considered obscene. Id. In so doing, he wholly abandoned his judicial role in favor of that of a law enforcement official and destroyed his "neutral and detached" characterization.
 {¶ 15} As distinguished from the holding in LO-JI, inHeller v. New York (1973), 413 U.S. 483, 93 S.Ct. 2789,37 L.Ed.2d 745, the United States Supreme Court held that a judge who simply viewed a film in a theater prior to concluding that the film was obscene and that probable cause existed for the seizure of the film still qualified as neutral and detached for purposes of issuing a warrant. Additionally, in U.S. v. Duncan
(1970), 420 F.2d 328, the Fifth Circuit Court of Appeals held that the mere fact that a commissioner who issued a search warrant accompanied officers on the raid was not enough to defeat neutrality or detachment, as long as there was a determination of probable cause before the warrant was executed.
 {¶ 16} In light of these holdings, we turn to the case at hand. Appellant asserts that the Circleville Municipal Court's establishment of a "Search warrant policy for Seizure of Blood Samples for Forensic Analysis In Arrest for violations of Ohio Revised Code 4511.19" rendered Judge Adkins unable to perform as a neutral and detached magistrate. We disagree. It is common practice for courts to develop various directives or standards to be followed by those practicing before them. One example is that most municipal courts have developed standards to be followed by law enforcement in the investigation and prosecution of domestic violence cases. The protocol issued by Judge Adkins for the Circleville Municipal Court regarding its search warrant policy for those arrested for violations of R.C. 4511.19 is no different. By its directive, the Circleville Municipal Court is providing law enforcement officials with an explanation of what circumstances should exist before they seek a search warrant from that court. Given the fact that search warrants of this kind are typically, though not always, requested during late night and early morning hours, the existence of a policy such as the one at issue here is not unreasonable. It likewise does not render Judge Adkins unable to perform as a detached and neutral magistrate.
 {¶ 17} Appellant also argues, under the same rationale, that Judge Adkins was neither detached nor disinterested because he drafted the fill-in-the-blanks emergency search warrant application used by the Circleville Municipal Court in all R.C.4511.19 blood sample seizures. Appellant likewise contends that Judge Adkins is neither neutral nor detached because he filled in the search warrant application with the information provided by Trooper Caplinger. The magistrate or judge must make the ultimate decision about whether to issue a search warrant. In so doing, he must consider whether the affidavit is in proper format, sufficient facts are present to provide probable cause to believe the defendant is under the influence of alcohol or drugs, and a search warrant is proper under the totality of the circumstances. By preparing a fill-in-the-blank type of affidavit, Judge Adkins was likely attempting to ensure that any affidavits coming before the court would be submitted in the proper format; he was also attempting to make it clear, for his own benefit in review, to easily see whether sufficient facts exist on the face of any affidavit to provide probable cause to issue a search warrant. Preparation of these documents for court use in accordance with such does not render him a biased, non-neutral decisionmaker. With regard to Judge Adkins filling in the blanks of the affidavit at issue in this case, Trooper Caplinger provided Judge Adkins with the pertinent information detailed in the affidavit. Trooper Caplinger then swore to the information detailed in the affidavit. From these two important details, we are able to see that the statements set forth in the affidavit were Trooper Caplinger's alone. Therefore, the fact that Judge Adkins merely transcribed Trooper Caplinger's statements on the affidavit did not make him a non-neutral magistrate.
 {¶ 18} Finally, Appellant argues that the fact that Judge Adkins went to the hospital, where he could have potentially come into contact with Appellant, makes him non-neutral. Appellant makes the assumption that Judge Adkins, while reviewing the facts with Trooper Caplinger, was in view of the Appellant at the hospital, thus potentially making him a witness to Appellant's condition. There is no evidence presented, however, indicating that Judge Adkins was ever in a position to be in actual visual contract with Appellant at the hospital or elsewhere. In fact, standard protocol for situations such as the one at issue is that the judge arrives at the hospital and reports to the nurses' station. The requesting officer meets with him there and reviews the facts for the search warrant application so that the judge can make a determination as to whether sufficient evidence exists to establish probable cause for the issuance of the search warrant. While this is occurring, the defendant is in a separate room where the blood specimen is to be drawn. At no time is the judge in actual view of the defendant to observe his condition.
 {¶ 19} In the case sub judice, there is no evidence indicating that Judge Adkins ever came into contact with Appellant, nor that he participated in any way in the execution of the warrant. As such, in this respect, he is presumed to be neutral and detached.
 {¶ 20} Therefore, because Judge Adkins' determination of probable cause was soundly warranted in this case, and because our review of his actions shows that he remained a neutral and detached magistrate at all points at issue, we affirm the decision of the Circleville Municipal Court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion.
[1] 1 R.C. 4511.19 has been amended several times since Taylor's offense. We apply the version of R.C. 4511.19 that was in effect at the time of the offense. State v. Young, Ross App. No 04CA2765, 2004-Ohio-4730, at fn. 1.