[Cite as *State v. Clemons*, 2013-Ohio-3415.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 12CA9 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| ASTASIA CLEMONS, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | **Released: 07/24/13** |

_____

APPEARANCES:

Conrad A. Curren and Carol Ann Curren, Greenfield, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for Appellee.

Elizabeth Cooke, Amna Akbar, Alyssa Bowerman, and Wondwosen Woldegebriel, The Ohio State Legal Clinic, Columbus, Ohio, and Farah Diaz-Tello, National Advocates for Pregnant Women, New York, New York, for Amici Curiae.

_____

McFarland, P.J.

{¶1} Appellant, Astasia Clemons, appeals her conviction for corrupting another with drugs after pleading no contest to the charge upon the trial court's denial of her motion to dismiss. On appeal, Appellant contends that the trial court erred to her detriment when it denied her motion to dismiss count one of the indictment. In light of our determination that the allegations contained in the indictment did not constitute an offense under

Ohio criminal law, we conclude that the trial court erred in denying

Appellant's motion to dismiss the indictment.  As such, Appellant's sole

assignment of error is sustained.  Accordingly, the decision of the trial court

is reversed and Appellant's conviction is vacated.

FACTS

{¶2} A review of the record reveals that on November 14, 2011,

Appellant gave birth to a child who, upon birth, tested positive for

marijuana, morphine an oxycodone.  As a result, the child was transferred to

Dayton's Children's Hospital, where she was treated and released.

Appellant later informed a Children's Services worker that she had ingested

Percocet, without a prescription, prior to giving birth, and had also used

marijuana throughout her pregnancy.

{¶3} Based upon these events, on January 10, 2012, Appellant was

indicted on two counts of corrupting another with drugs, in violation of R.C.

2925.02(A)(1) and (A)(3), both second-degree felonies.  Appellant appeared

for her arraignment without counsel and the court entered a plea of not guilty

on her behalf.  Subsequently, on March 29, 2012, Appellant filed a motion to

dismiss both charges, claiming the charges were not valid based upon the

plain language of the statute.  A hearing was held on the motion on April 4,

2012, after which the trial court granted Appellant's motion to dismiss the

R.C. 2925.03(A)(3) charge only, based upon the fact that it appeared the child had suffered no injury as a result of the drug exposure. The trial court denied the motion as to the (A)(1) charge, which did not contain the element of physical harm.

{¶4} Appellant ultimately entered a plea of no contest to the R.C. 2925.02(A)(1) charge on April 6, 2011, and was sentenced to two years imprisonment, which were stayed pending appeal.

## ASSIGNMENT OF ERROR

"I.     THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT/DEFENDANT WHEN IT DENIED THE APPELLANT'S/DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT."

## LEGAL ANALYSIS

{¶5} In her sole assignment of error, Appellant contends that the trial court erred to her detriment when it denied her motion to dismiss count one of the indictment. " '[A] motion to dismiss charges in an indictment tests the [legal] sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced by either the state or the defendant.' " *State v. Barcus*, 133 Ohio App.3d 409, 414, 728 N.E.2d 420 (1999); quoting *State v. Patterson*, 63 Ohio App.3d 91, 95, 577 N.E.2d 1165 (1989). Thus, "when a defendant moves to dismiss, the proper determination is whether the allegations contained in the indictment constitute offenses

under Ohio criminal law." Id. If they do, it is premature for the trial court to determine, in advance of trial, whether the state could satisfy its burden of proof with respect to those charges. *State v. Nihiser*, 4th Dist. No. 03CA21, 2004-Ohio-4067, ¶ 9.

{**¶6**} Appellate review of a trial court's decision regarding a motion to dismiss involves a mixed question of law and fact. *State v. Staffin*, 4th Dist. No. 07CA2967, 2008-Ohio-338, ¶ 6 (reviewing a dismissal on speedy-trial grounds), citing *State v. Pinson*, 4th Dist. No. 00CA2713, 2001 WL 301418 (Mar. 16, 2001). We accord due deference to the trial court's findings of fact if supported by competent, credible evidence; however, we independently review whether the trial court properly applied the law to the facts of the case. Id.; citing *State v. Thomas*, 4th Dist. No. 06CA825, 2007-Ohio-5340, ¶ 8.  Thus, our role is limited to conducting a de novo review of the trial court's application of the law to the stipulated facts. *State v. Taylor*, 4th Dist. No. 05CA19, 2005-Ohio-6378, ¶ 10 (dealing with a motion to suppress).[1]

{**¶7**} A court interpreting a statute must look to the language of the statute to determine legislative intent. *State v. Osborne*, 4th Dist. No. 05 CA2, 2005-Ohio-6610, ¶ 18. Courts should give effect to the words of the statute and should not modify an unambiguous statute by deleting or

---

[1] Although there were no "stipulated facts" per se, counsel for both the State and Appellant referred to certain facts below that appeared to be agreed upon relating to the child's toxicology results after birth and Appellant's drug use during pregnancy.

inserting words; that is, we have no authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation. *State v. McDonald*, 4th Dist. No. 04CA2806, 2005-Ohio-3503, ¶ 11. In interpreting a criminal statute, courts must construe the statute strictly against the state and liberally in favor of the accused. R.C. 2901.04(A); *State v. Gray*, 62 Ohio St.3d 514, 515, 584 N.E.2d 710 (1992). "The interpretation of a statute or ordinance is a question of law, which we review de novo." *State v. Frey*, 166 Ohio App.3d 819, 2006-Ohio-2452, 853 N.E.2d 684, ¶ 9.

{¶8} Appellant was originally indicted on two counts of corrupting another with drugs, in violation of R.C. 2925.02(A)(1) and (A)(3), based upon the fact that she gave birth to a child who was drug dependent at birth by virtue of Appellant's drug use during pregnancy. As set forth above, the indictment on the (A)(3) charge was dismissed based upon the belief that the child did not suffer any physical harm as a result, but the trial court refused to dismiss the indictment on the (A)(1) charge, which did not contain physical harm as an element. As a result, Appellant pled no contest to corrupting another with drugs in violation of R.C. 2925.02(A)(1), which provides that:

"(A) No person shall knowingly do any of the following:

(1) By force, threat, or deception, administer to another or

induce or cause another to use a controlled substance[.]"

The word "another" is not defined within the statute, nor does a definition of

"another" appear in the definitions section of R.C. 2925.  In fact, like the

trial court, we were unable to find a definition for the word "another;"

however, we agree with the trial court's common sense reversion to the word

"person" to determine the meaning of the word "another" within the context

of this statute.

{¶9}  As such, we look to the general provisions of R.C. Chapter 29

wherein R.C. 2901.01 "Definitions" defines the word "person" in section

(B)(1)(a) as follows:

"(B)(1)(a) Subject to division (B)(2) of this section, as used in

any section contained in Title XXIX of the Revised Code that

sets forth a criminal offense, "person" includes all of the

following:

(i) An individual, corporation, business trust, estate, trust,

partnership, and association;

*(ii) An unborn human who is viable.*

(b) As used in any section contained in Title XXIX of the

Revised Code that does not set forth a criminal offense,

"person" includes an individual, corporation, business trust,

estate, trust, partnership, and association.

(c) As used in division (B)(1)(a) of this section:

(i) "Unborn human" means an individual organism of the

species Homo sapiens from fertilization until live birth.

(ii) "Viable" means the stage of development of a human fetus

at which there is a realistic possibility of maintaining and

nourishing of a life outside the womb with or without

temporary artificial life-sustaining support.

(2) Notwithstanding division (B)(1)(a) of this section, *in no*

*case shall the portion of the definition of the term "person" that*

*is set forth in division (B)(1)(a)(ii) of this section be applied or*

*construed in any section contained in Title XXIX of the Revised*

*Code that sets forth a criminal offense in any of the following*

*manners:*

\* \* \*

*(b) In a manner so that the offense is applied or is construed as*

*applying to a woman based on an act or omission of the woman*

*that occurs while she is or was pregnant and that results in any*

*of the following:*

(i) Her delivery of a stillborn baby;

(ii) Her causing, in any other manner, the death in utero of a viable, unborn human that she is carrying;

(iii) Her causing the death of her child who is born alive but who dies from one or more injuries that are sustained while the child is a viable, unborn human;

*(iv) Her causing her child who is born alive to sustain one or more injuries while the child is a viable, unborn human;*

*(v) Her causing, threatening to cause, or attempting to cause, in any other manner, an injury, illness, or other physiological impairment, regardless of its duration or gravity, or a mental illness or condition, regardless of its duration or gravity, to a viable, unborn human that she is carrying."* (Emphasis added).

Thus, based upon the definitions provided in R.C. 2901.01, it is clear that Appellant's unborn child was a person, even while in utero before its birth. The trial court reached this same result in determining whether Appellant's child was a "person" or "another," for purposes of R.C. 2925.02(A) at the time of Appellant's drug use.

{¶10} However, as set forth above, R.C. 2901.01 contains exceptions or limits to the manner in which the word "person" can be "applied or

construed" in a situation involving a pregnant woman and her viable, unborn child. Specifically, R.C. 2901.01 (B)(2)(b)(i)-(v) essentially protects conduct by a woman during her pregnancy that might or does result in the injury, illness, impairment or death of her child, either before or after its birth. Thus, based upon a plain reading of the statute, a woman cannot be criminally prosecuted for her conduct during pregnancy that results in harm to her child.

**{¶11}** Much like the parties, this Court has been unable to locate any other case in Ohio where a woman was convicted of a crime for actions taken during pregnancy that affected her unborn child. Although Appellant directs our attention to *State v. Hade*, 6th Dist. No. OT-07-037, 2008-Ohio-1859, our review of that case reveals that although Hade was indicted for a violation of R.C. 2925.02(A)(4)(a), she was ultimately not convicted of that offense. Instead she pled guilty to drug possession and child endangering. Id. at ¶ 2.

**{¶12}** Which leads to the next topic of discussion that has been highly debated both below and on appeal, i.e. whether or not the Supreme Court of Ohio's holding in *State v. Gray*, supra, has any applicability to the case sub judice. In *Gray*, the Court held that "[a] parent may not be prosecuted for child endangerment under R.C. 2919.22(A) for substance

abuse occurring before the birth of the child." *Gray* at syllabus.

Admittedly, *Gray* involved a different statute, child endangering, which

supposes a certain relationship existing between a parent and a child, which

is not present in R.C. 2925.02.  However, we find its reasoning to be

applicable nonetheless.  For instance, as reasoned in *Gray*, "[t]he statutory

and regulatory scheme in Ohio strongly indicates that where the concerns of

the unborn are at issue, the legislature and administrative bodies have

referred to the unborn specifically."  *Gray* at 516.  (Internal citations

omitted).

{¶13} Further, we agree with the sentiment of the *Gray* Court, which

acknowledged the growing problem of prenatal drug use.  Id. at 517-518.

As set forth in *Gray* verbatim:

> " 'The Legislature is an appropriate forum to discuss public
>
> policy, as well as the complexity of prenatal drug use, its effect
>
> upon an infant, and its criminalization.' [*People v. Hardy*,
>
> supra, 188 Mich.App. 305, 310, 469 N.W.2d 50 (1991).] The
>
> Ohio Legislature currently has before it S.B. No. 82, which, if
>
> passed, would create the new crime of prenatal child neglect

[2]to handle situations such as those at bar. ' "A court should not place a tenuous construction on [a] statute to address a problem to which the legislative attention is readily directed and which it can readily resolve if in its judgment it is an appropriate subject of legislation." ' *Hardy*, quoting *People v. Gilbert* (1982), 414 Mich. 191, 212–213, 324 N.W.2d 834, 844. '[I]f a legally cognizable duty on the part of pregnant women to their developing fetuses is to be recognized, the decision must come from the legislature only after thorough investigation, study and debate.' *Stallman v. Youngquist* (1988), 125 Ill.2d 267, 280, 126 Ill.Dec. 60, 66, 531 N.E.2d 355, 361. The legislature is now undertaking the thorough investigation necessary to resolve this important and troubling social problem." Id.; see also *In re Baby Boy Blackshear*, 90 Ohio St.3d 197, 736 N.E.2d 462, FN 2 (2000) (finding that a newborn child with a positive toxicology screen is per se an abused child for purposes of R.C. 2151.031(D), but noting that the court must liberally construe the applicable statute in favor

---

[2] Originally denoted as FN3 in Gray, the Supreme Court was referring to then pending draft version of R.C. 2919.221, which prohibited actions by pregnant women which would cause their children to be "drug exposed at birth."

of the accused, as opposed to a criminal case, where the court

must strictly construe the statute against the state).

However, our research indicates that neither this proposed legislation, nor

any other similar legislation has ever been passed.  Although Appellee

indicates that R.C. 2925.02, as it currently exists, was the legislature's

answer to the growing problem of prenatal drug use, our review of the plain

language of the statute, coupled with our review of the legislative history

related thereto does not lead us to that conclusion.  Further, a review of

pending legislation regarding this statute contained in S.B. No. 329, dated

April 17, 2012, reveals no addition or clarification that this offense does, in

fact, encompass conduct of a pregnant woman in relation to her unborn

child.

{¶14}  Here, the State argued and the trial court concluded that

because R.C. 2925.02(A)(1) did not contain an element of physical harm,

that the exceptions to the definition of "person" under R.C. 2901.01 did not

apply, and that Appellant could be prosecuted for the crime.  Based upon the

foregoing, however, we disagree.  Instead we find the plain language of R.C.

2925.02, read in conjunction with the definitions and exceptions thereto

contained in R.C. 2901.01, do not support the application of the statute to the

facts sub judice.  Further, we find merit to Appellant's argument that it is

"incongruous" to disallow prosecution for a woman's conduct during pregnancy that results in harm to her unborn child, while allowing prosecution for conduct that does not harm her child. "Such a result would be absurd, and '[i]t is presumed that the legislature does not intend absurd results.' *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 56, citing *State ex rel. Haines v. Rhodes* (1958), 168 Ohio St. 165, 5 O.O.2d 467, 151 N.E.2d 716, paragraph two of the syllabus." *Widen v. Pike Cty.*, 187 Ohio App.3d 510, 2010-Ohio-2169, 932 N.E.2d 929, ¶ 23.

{¶15} Based upon the foregoing reasoning and the absurd result that we reach if we apply the definitions contained in R.C. 2901.01 to permit prosecution for maternal conduct that results in no harm to the unborn child, while protecting maternal conduct that actually results in harm or threatened harm to the child, we sustain Appellant's sole assignment of error. In reaching this result, we acknowledge and agree with the concerns mentioned in *State v. Gray*, supra, regarding the growing problem of prenatal, or maternal, drug use.

{¶16} Nonetheless, based upon the language of the statute as it exists at this time, as well as the absence of any legislative action in this area since the time in which *State v. Gray*, supra, was decided, we are constrained to find that the trial court failed to correctly apply the law to the facts of this

case.  As such, we conclude that the trial court erred in denying Appellant's

motion to dismiss this portion of the indictment and, thus, we sustain

Appellant's sole assignment of error.  Accordingly, the decision of the trial

court is reversed and Appellant's conviction is vacated.

**JUDGMENT REVERSED AND VACATED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED AND VACATED and Appellant recover costs from Appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J. & Abele, J.:  Concur in Judgment Only.

For the Court,

BY:    _____
            Matthew W. McFarland
            Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**