[Cite as *State v. Moore*, 2024-Ohio-1354.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellant

    v.

DEPRISE MOORE

    Appellee

C.A. No.    30677

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 22 01 0026

DECISION AND JOURNAL ENTRY

Dated: April 10, 2024

SUTTON, Presiding Judge.

{¶1}    Plaintiff-Appellant State of Ohio appeals from the judgment of the Summit County Court of Common Pleas dismissing the criminal indictment against Defendant-Appellee Deprise Moore.  This Court affirms.

I.

{¶2}    In January 2017, an automobile accident occurred in the City of Akron, where Mr. Moore, travelling at a speed in excess of the limit, ran a stop sign and crashed into a vehicle driven by the victim in this case, D.G.  The crash severed D.G.'s spine and left her permanently paralyzed. Mr. Moore fled the scene of the accident on foot, but later turned himself into police.

{¶3}    About a month after the accident, Mr. Moore was indicted on one count of aggravated vehicular assault, in violation of R.C. 2903.08(A)(2), a felony of the third degree; one count of failing to stop after an accident in violation of R.C. 4549.02, a felony of the fifth degree;

and one count of driving under suspension, in violation of R.C. 4510.11, a misdemeanor of the first degree.

{¶4} Mr. Moore pleaded guilty to all three charges. He was sentenced to a definite and mandatory term of five years of incarceration, the maximum penalty, for the aggravated vehicular homicide count; six months of incarceration for the failure to stop after an accident count; and 180 days for the driving under suspension count. The sentences for aggravated vehicular assault and failing to stop were to be served consecutively.

{¶5} In October 2021, D.G. passed away as a result of the injuries sustained in the January 2017 accident. Mr. Moore, while still incarcerated for his original sentence, was subsequently indicted on one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2), R.C. 2903.06(B)(3), for D.G.'s death.

{¶6} Mr. Moore filed a motion to dismiss the subsequent indictment. The trial court held a hearing on the motion and granted Mr. Moore's motion to dismiss.

{¶7} The State filed a timely appeal from that order of dismissal, assigning one error for our review.

II.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED IN DISMISSING THE INDICTMENT.**

{¶8} In its sole assignment of error, the State argues that the trial court erred in dismissing the indictment against Mr. Moore. For the reasons that follow, we disagree.

Dismissal of Indictment

{¶9} A trial court's ruling on a pretrial motion to dismiss a criminal indictment is subject to a mixed question of law and fact review. *State v. New*, 9th Dist. Lorain No. 15CA010754, 2016-

Ohio-7730, ¶ 13, citing *State v. Clemons*, 4th Dist. Highland No. 12CA9, 2013-Ohio-3415, ¶ 6. "We review a trial court's legal conclusions in ruling on a pretrial motion to dismiss criminal charges de novo." *Id.*, citing *State v. Wilson*, 10th Dist. Franklin No. 13AP-205, 2013-Ohio-4799, ¶ 4, citing *State v. Saxon*, 9th Dist. Lorain No. 09CA009560, 2009-Ohio-6905, ¶ 5. "We accord due deference to the trial court's findings of fact if supported by competent, credible evidence." *Id.*, citing *Clemons* at ¶ 6.

### Plea Agreements and Subsequent Indictments

{¶10} In this case, the trial court granted Mr. Moore's motion to dismiss the State's second indictment for the charge of aggravated vehicular homicide, finding that pursuant to the Ohio Supreme Court's ruling in *State v. Carpenter*, 68 Ohio St.3d 59 (1993), the State failed, at the time of the defendant's guilty plea, to reserve the right to pursue further prosecution of the defendant for homicide charges in the event that the victim later died. "When a defendant has entered a plea to a nonhomicide offense and the victim later dies as a result of the conduct that gave rise to the offense, the state *may* bring charges for homicide without running afoul of the constitutional prohibitions against double jeopardy." (Emphasis added.) *State v. Azeen*, 163 Ohio St.3d 447, 2021-Ohio-1735, ¶ 17. However, "[t]he state cannot indict a defendant for murder after the court has accepted a negotiated guilty plea to a lesser offense and the victim later dies of injuries sustained in the crime, unless the state expressly reserves the right to file additional charges on the record at the time of the defendant's plea." *State v. Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, ¶ 1, quoting *Carpenter* at syllabus.

{¶11} The record shows, and it is uncontested, the State did not expressly reserve the right to file additional charges at the time of Mr. Moore's guilty plea to the charges contained in the first indictment. Rather, the State argues that a negotiated guilty plea did not exist in this case and,

therefore, the State was not required to reserve the right to bring additional charges. Thus, the question we must consider on appeal is whether the trial court erred in concluding a negotiated plea existed. When considering whether a negotiated plea existed, "effect must be given to the intention of the [S]tate and the defendant in their plea bargain, and courts should enforce what they perceive to be the terms of the original plea agreement." *Dye* at ¶ 22.

### Mr. Moore's Motion to Dismiss

{¶12} After the State indicted Mr. Moore on the aggravated vehicular homicide charge, Mr. Moore filed a motion to dismiss the indictment on the grounds the State failed to expressly reserve on the record its right to file additional charges against Mr. Moore if the victim subsequently dies of the injuries sustained in the accident. The State responded in opposition, arguing no negotiated plea existed in the case, therefore, the State was not required to expressly reserve the right to bring additional charges. The trial court held a hearing on the motion. Mr. Moore argued the record contained a plea agreement signed by the prosecutor, C.P., who originally handled the case. The State subpoenaed C.P. as a witness and presented his testimony at the hearing. C.P. testified he "[v]aguely" recalled the case but remembered it better than other cases he handled due to the extent and severity of the victim's injuries. He testified he did not recall the victim in the case having any life-threatening injuries and he had no reason to believe she would die of those injuries. C.P. also testified he was required to sign the plea form for every plea entered before the trial court judge.

{¶13} The trial court, in ruling on Mr. Moore's motion to dismiss, made several factual findings based on the record in this case. The trial court found the victim's death in this case was foreseeable as a result of her injuries, the defendant reasonably believed that pleading guilty would

provide final closure to the matter, and that a negotiated plea occurred within the meaning of *Carpenter*.

{¶14} The trial court, in finding a negotiated plea existed, noted the following:

In determining whether a "negotiated plea" as contemplated in *Carpenter* occurred in this case, this [c]ourt acknowledges that this is a close question. Obviously, the traditional notion of a negotiated plea involves situations where the State reduces or dismisses some charges, or agrees to some sentence less than the maximum in order to induce the defendant to plead guilty. Those particular inducements did not occur in this case. However, the question[] remains, was there an understating between the parties that an agreement of some type had been reached? To answer this question, the [c]ourt must look at the record. The defense and prosecution signed an agreement defining the terms of the plea negotiation as "plead guilty to the indictment, free to argue" regarding the sentencing. This ability to argue sentencing mattered to the defense, as demonstrated by the length of the sentencing hearing the number of witnesses called to speak on the defendant's behalf, as well as counsel's extensive statements on his client's behalf. In addition, the defendant apologized to the victim while also taking responsibility for the accident. These efforts did result in a shorter sentence for the defendant. In addition to this opportunity, it is apparent that [Mr.] Moore and his counsel believed that this sentencing concluded the matter. Even the judge discussed the fact that the defendant's plea saved the victim's family from having to come to court and endure a trial, and deal with this situation for yet "one more day."

As to the [S]tate's understanding of any agreement, the record supports the finding that while there was no agreement as to the sentence to be imposed, the prosecutor believed that a plea agreement was in place. He indicated on the record that the attorneys had discussed the matter, and the defendant would be changing his plea. Both attorneys and the defendant signed the plea agreement form.

Also, and importantly, the prosecutor objected to the notion of a no contest plea, as is often permitted when civil liability is a strong possibility. In this case, a civil suit had already begun, thus a guilty plea would be highly desired by the victim, as it would greatly ease her ability to succeed in the civil matter, as a *no contest* plea is not admissible in order to help determine liability in civil litigation. In addition, many victims desire to hear a defendant say the words, "I'm guilty." Obviously, the guilty plea mattered to the [S]tate as the prosecutor objected to the no contest plea, insisting on a guilty plea, stating to the judge that to allow a no contest plea "would be in violation of the plea agreement." This court finds that a negotiated plea did occur in this matter.

(Emphasis in original.)

**{¶15}** A close examination of the record shows that the trial court's factual finding that a negotiated plea existed is supported by competent, credible evidence in the record. The record contains a written plea form, signed by both the prosecutor and defense counsel. That plea form has a heading titled "plea negotiations/agreement" with a space where terms of any negotiated plea are to be written. Instead of indicating that no plea agreement existed, underneath the words "The plea agreement is stated entirely as follows:" the words "free to argue" are written in on the form.

**{¶16}** Additionally, in support of the conclusion the State believed a negotiated plea existed, the record shows the prosecutor referred to a "plea agreement" on the record during the change of plea hearing:

| | |
|---|---|
| [DEFENSE COUNSEL]: | Judge, would the [c]ourt be willing to accept a no-contest with a consent to finding of guilt, considering there was an accident involved here? |
| [PROSECUTOR]: | The State would object, Your Honor. |
| THE COURT: | Well, this is just being thrown at me today. |
| [PROSECUTOR]: | *Your Honor, it's in violation of the plea agreement*. |

(Emphasis added.)

**{¶17}** Further, considering principles of contract law, we agree with the trial court's conclusion that a negotiated plea existed. *See Dye*, 2010-Ohio-5728 at ¶ 21 ("A plea bargain itself is contractual in nature and subject to contract-law standards."). (Internal quotations omitted.) When determining whether a plea agreement has been formed, courts have drawn on the principles of contract law that pertain to the formation and interpretation of contracts. *See Dye* at ¶ 21, citing *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986). Regarding the formation of a contract,

this Court previously stated *in Carlisle v. T & R Excavating, Inc.*, 123 Ohio App.3d 277, 283 (9th Dist.1997):

> A contract consists of an offer, an acceptance, and consideration. Without consideration, there can be no contract. Under Ohio law, consideration consists of either a benefit to the promisor or a detriment to the promisee. To constitute consideration, the benefit or detriment must be "bargained for." Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise. The benefit or detriment does not need to be great. In fact, a benefit need not even be actual, as in the nature of a profit, or be as economically valuable as whatever the promisor promises in exchange for the benefit; it need only be something regarded by the promisor as beneficial enough to induce his promise.

(Internal citations omitted.) The State argues on appeal that there was nothing promised to Mr. Moore. In other words, there was no consideration. While Mr. Moore did not enter into a plea agreement that reduced his sentence or modified the charges against him, the Ohio Supreme Court has noted "anytime a defendant enters a guilty plea, he or she will have relinquished the right to a trial at which the defendant could be acquitted, and the state gains the benefit of obtaining a conviction without going to trial." *Dye* at ¶ 25. The trial court judge referenced this benefit of obtaining a conviction without going to trial at the sentencing hearing. As far as the benefit gained by Mr. Moore, he argued at the hearing on the motion to dismiss that by entering the guilty plea, his bond was reinstated until sentencing after the trial court had previously revoked his bond. Mr. Moore argued he negotiated for this benefit off the record with the prosecutor and received it by pleading guilty. Additionally, as the trial court noted, the record shows that the ability to be able to argue for a reduced sentence at the sentencing hearing meant something to Mr. Moore due to the number of witnesses called by Mr. Moore at the hearing and his counsel's extensive statements on his behalf.

{¶18} Like the *Dye* Court, on this record, the evidence of a negotiated plea, combined with the trial court's findings that the parties were aware of the gravity of the victim's injuries, and

the State's failure to reserve the right to prosecute for any later homicide charge, justify the trial court's conclusion that the State agreed to forego further prosecution of Mr. Moore. *See Dye* at ¶ 25.

{¶19} The dissent posits, without citation to legal authority, that because the trial court asked Mr. Moore at the plea hearing whether any promises were made to him in exchange for his guilty plea, and Mr. Moore indicated that no promises were made to him, it shows no consideration was given, and, therefore, no plea agreement was negotiated in this case. However, reliance on that exchange to extrapolate a lack of consideration is misplaced. The exchange between the trial court and the defendant is required because "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). As the Eighth District Court of Appeals noted in *State v. Jackson*, 8th Dist. Cuyahoga No. 105997, 2018-Ohio-1306, ¶ 17, such exchanges are "a required part of a court's plea colloquy under Crim.R. 11 to determine that a defendant's plea is entered knowingly, intelligently, and voluntarily." The dissent's interpretation of this required exchange would render *Carpenter* inapplicable to most, if not all, guilty pleas and it "would effectively render the Ohio Supreme Court's decision in *Carpenter* meaningless." *Id.*

{¶20} The State's assignment of error is overruled.

III.

{¶21} The State's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

9

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT


FLAGG LANZINGER, J.
CONCURS.

CARR, J.
DISSENTING.

**{¶22}** Because Moore simply pleaded guilty, without entering into a plea agreement with the State, I respectfully dissent.

**{¶23}** A defendant can enter a guilty plea with or without a plea agreement. As has often been written, "[p]lea agreements are an essential and necessary part of the administration of justice." *State v. Carpenter*, 68 Ohio St.3d 59, 61 (1993); *Santobello v. New York*, 404 U.S. 257, 261 (1971). Plea agreements usually include some benefit to both parties to the agreement, from

lesser charges or sentences to the elimination of the burden and risk of trial. *See, e.g., Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). The Ohio Supreme Court has recognized that, in plea bargains, each side bargains away its desired outcome. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, ¶ 41. But that is not what happened in this case.

{¶24} Moore simply entered a guilty plea. It may be unusual, but it is not unheard of. *See, e.g., State v. Hensley*, 9th Dist. Lorain Nos. 22CA011872, 22CA011920, 2023-Ohio-2910, ¶ 4.

{¶25} In this case, there was no plea agreement. If there had been a plea agreement, Crim.R. 11(F) would have required that agreement to be stated on the record. Neither party during Moore's plea hearing stated that there was an agreement. Moore said he was not promised anything to enter his pleas. The record of the plea hearing belies the conclusion that there was a plea agreement. "In order for a guilty plea to be a 'negotiated guilty plea' within the meaning of *State v. Carpenter*, the record must show the existence of the elements of a contract (the plea agreement)." *State v. Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, ¶ 23.

{¶26} In this case, the defendant told his attorney that he wanted to plead guilty. The parties used the form required by the trial court for every plea, labelled "Written Plea of Guilty[,]" to memorialize the guilty plea. It shows Moore entered guilty pleas to the offenses charged and that the parties were free to argue about the sentence or, in other words, that there was no agreement as to the sentence. Nothing in this proceeding shows "the existence of the elements of a contract[.]" *Dye* at ¶ 23.

{¶27} Crim.R. 11(F) requires all plea agreements to be presented on the record in open court. No negotiated plea agreement or terms were stated on the record as part of Moore's plea

hearing, as required by the rule. The elements of a contract are also lacking. There was no consideration given here. The record of the plea hearing shows no promises were made.

{¶28} Because the record of the plea hearing fails to suggest that there was a plea agreement, I would conclude that the trial court erred by holding a hearing and reaching the decision it did. Therefore, I would reverse the decision of the trial court.


APPEARANCES:

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellant.

NOAH MUNYER, Attorney at Law, for Appellee.