THE STATE OF OHIO, APPELLANT, *v*. DYE, APPELLEE.

[Cite as *State v. Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728.]

*Criminal law — Effect of negotiated guilty pleas on future charges — When the state accepts a negotiated guilty plea and the victim later dies of the injuries sustained in the crime, the defendant cannot be indicted for murder unless the state reserved the right to file additional charges — Plea here had been negotiated — Judgment affirmed.*

(No. 2009-1149 — Submitted March 31, 2010 — Decided December 1, 2010.)

APPEAL from the Court of Appeals for Lake County,

No. 2008-L-106, 2009-Ohio-2949.

————————————

**CUPP, J.**

{¶ 1}   When may a defendant who has pleaded guilty to an offense less than homicide prior to the victim's death be prosecuted for homicide when the victim subsequently dies?  In *State v. Carpenter* (1993), 68 Ohio St.3d 59, 623 N.E.2d 66, syllabus, we held, "The state cannot indict a defendant for murder after the court has accepted a negotiated guilty plea to a lesser offense and the victim later dies of injuries sustained in the crime, unless the state expressly reserves the right to file additional charges on the record at the time of the defendant's plea." The answer depends upon the meaning of "negotiated guilty plea" and whether the facts show such a plea in Dye's case.

{¶ 2}   For the reasons that follow, we hold that Dye's original guilty plea was a "negotiated guilty plea" within the meaning of *Carpenter*, and accordingly, his conviction for aggravated vehicular homicide under R.C. 2903.06(A)(1)(a) is barred.

**I**

**{¶ 3}** On August 10, 1999, appellee, James Dye, drove his truck while Dye was under the influence of alcohol and while his driver's license was suspended. Dye's vehicle struck Robbie Arnold, a 13-year-old boy, in front of Arnold's home in Concord Township, Ohio. The boy suffered severe injuries, which left him a quadriplegic. Police who came to scene of the accident observed that Dye smelled of alcohol and slurred his speech, and Dye eventually admitted having drunk seven beers before driving.

**{¶ 4}** In September 1999, the grand jury indicted Dye on one count of aggravated vehicular assault in violation of R.C. 2903.08, a fourth-degree felony, and one count of driving under the influence of alcohol in violation of R.C. 4511.19, a first-degree misdemeanor. The aggravated-vehicular-assault count also added three specifications: (1) that Dye was under the influence of alcohol during the offense, (2) that he was driving with a suspended license when he committed the offense, and (3) that he had a previous conviction for driving under the influence of alcohol. Dye initially pleaded not guilty to these charges, but in November 1999, he changed his plea to guilty of aggravated vehicular assault and the first specification, driving under the influence of alcohol, as well as to the second count. Based on Dye's guilty plea, the trial court, on the state's motion, dismissed the other two specifications in the first count of the indictment. Despite the gravity of Arnold's injuries, apparent at the time of the plea, the state did not reserve the right to file additional criminal charges should Arnold die from those injuries.

**{¶ 5}** In addition to recommending that the second and third specifications be dismissed, the state represented that an agreement had been reached with Dye regarding bond pending sentencing:

**{¶ 6}** "THE COURT: * * * You want to continue his bond? I was considering cancelling his bond today. Had you made an agreement?

**{¶ 7}** "[THE STATE]: I had assumed that bond was continued. *We had represented to the Defendant that that would happen.*

**{¶ 8}** "THE COURT: You would recommend that?

**{¶ 9}** "[THE STATE]: Yes.

**{¶ 10}** "THE COURT: You were involved with the case?

**{¶ 11}** "[THE STATE]: Yes. *That's what we had agreed to with the same conditions*, one, no driving, and two, no drug and alcohol use pending the presentence report. We are also asking that a victim impact statement be ordered.

**{¶ 12}** "THE COURT: I will order the victim impact statement as well. And *with your recommendation* I will allow him to continue on bond." (Emphasis added.)

**{¶ 13}** In December 1999, the trial court sentenced Dye to the maximum prison term for each count: 18 months for aggravated vehicular assault and six months for driving under the influence, to be served concurrently. Dye was released from prison in June 2001 after serving his full prison term.

**{¶ 14}** On December 26, 2006, more than seven years after the date of the original incident, Robbie Arnold died from complications of his injuries, prompting the state to pursue new charges of aggravated vehicular homicide against Dye. In July 2007, the grand jury indicted Dye on three counts of aggravated vehicular homicide: (1) as a proximate result of driving under the influence of alcohol, in violation of the current R.C. 2903.06(A)(1)(a), a first-degree felony, (2) recklessly, in violation of the current R.C. 2903.06(A)(2)(a), a second-degree felony, and (3) recklessly, in violation of the 1999 version of R.C. 2903.06(A), a third-degree felony. Am.Sub.S.B. No. 238, 146 Ohio Laws, Part VI, 10416, 10427.

**{¶ 15}** Dye moved to dismiss the indictment on the authority of *Carpenter*, 68 Ohio St.3d 59, 623 N.E.2d 66, contending that his 1999 guilty plea to the aggravated-vehicular-assault and driving-under-the-influence charges was a

"negotiated guilty plea" within the meaning of *Carpenter*, and therefore, further prosecution of him for the 1999 incident was barred.[1] The trial court denied the motion to dismiss, concluding that Dye had not pleaded guilty to a lesser offense in 1999 and that there was insufficient evidence that the guilty plea was "negotiated" within the meaning of *Carpenter*. Dye then changed his plea to "no contest" to Count One of the indictment, which charged aggravated vehicular homicide under the current R.C. 2903.06(A)(1)(a). The trial court found Dye guilty on that count and sentenced him to nine years' imprisonment, less the time served on the prior aggravated-vehicular-assault conviction, for a total of seven and a half years' imprisonment, and ordered Dye to pay restitution to the victim's family.

{¶ 16} On appeal, the court of appeals sustained Dye's claim that *Carpenter* barred the prosecution for aggravated vehicular homicide. The court of appeals concluded that Dye's 1999 plea was "negotiated" under *Carpenter* because the state had obtained the benefit of a conviction without a trial and that the defendant, by pleading guilty, had given up the trial rights enumerated in Crim.R. 11(C). *State v. Dye*, Lake App. No. 2008-L-10, 2009-Ohio-2949, at ¶ 29-30. The court of appeals did not find consequential that the state had not given a favorable recommendation concerning sentencing or that Dye had been sentenced to the maximum at the state's request. Id. at ¶ 28. Nor did the court of appeals find it significant that the two specifications that were dismissed on the state's motion did not provide for a greater penalty than the specification to which Dye had pleaded guilty. Id.

{¶ 17} The state sought review in this court. We accepted the state's discretionary appeal on its first proposition of law. *State v. Dye*, 123 Ohio St.3d

_____

1. Dye also filed another motion, urging the court to apply the aggravated-vehicular-homicide statute that existed in 1999, which provided a lesser penalty than the law as it existed at the time of the victim's death in 2006. The trial court denied that motion. The court of appeals did not reach that issue, and it is not before us here.

1492, 2009-Ohio-6015, 916 N.E.2d 1073. It asserts, "*State v. Carpenter* does not stand for the proposition that every plea of guilty is a negotiated plea."

## II

### A

{¶ 18} In *Carpenter*, the defendant had stabbed a victim and was indicted for one count of felonious assault. 68 Ohio St.3d at 60, 623 N.E.2d 66. Four months later, Carpenter engaged in plea negotiations with the state and entered a guilty plea to the lesser included offense of attempted felonious assault. The opinion does not describe the substance of the plea agreement in that case, but stated that Carpenter pleaded guilty to attempted felonious assault, a lesser included offense than the felonious assault charged in the indictment, and the state agreed to and did recommend the minimum allowable sentence. Carpenter was sentenced to the minimum prison term of two to ten years. The plea agreement did not reserve the state's right to prosecute for any death of the victim resulting from the defendant's crime. One year and two months later, in March 1986, the victim of Carpenter's assault died. Carpenter was released from prison in 1987, after almost three years in prison on the attempted-assault charge. In 1988, he was indicted for the murder of the victim. The trial court eventually dismissed the indictment based on the terms of the 1985 plea agreement, but the court of appeals reversed.

{¶ 19} This court reversed and dismissed the murder indictment against Carpenter. We concluded that when the state accepts a negotiated guilty plea and the victim later dies of injuries sustained in the crime, the defendant cannot be indicted for murder when the state does not expressly reserve the right to file additional charges in the event of the victim's death. 68 Ohio St.3d at 60-61, 623 N.E.2d 66. We decided that Carpenter's expectation that his initial guilty plea would terminate prosecutions was reasonable under the circumstances. Id. at 62.

### B

**{¶ 20}** The basis for the rule announced in *Carpenter* was the application of contract law to the construction of the plea agreement: "The holding in *Carpenter* is essentially a synthesis of contract and criminal law in a particular factual setting. Its supporting analysis is ultimately derived from the proposition that plea agreements are a necessary and desirable part of the administration of criminal justice, and, therefore, ' "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." ' Id., 68 Ohio St.3d at 61, 623 N.E.2d 66, quoting *Santobello v. New York* (1971), 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427." *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, ¶ 11.[2]

**{¶ 21}** " '[A] plea bargain itself is contractual in nature and "subject to contract-law standards." ' " *Baker v. United States* (C.A.6, 1986), 781 F.2d 85, 90, quoting *United States v. Krasn* (C.A.9, 1980), 614 F.2d 1229, 1233, quoting *United States v. Arnett* (C.A.9, 1979), 628 F.2d 1162, 1164. "In the process of determining whether disputed plea agreements have been formed or performed, courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts." *United States v. Harvey* (C.A.4, 1986), 791 F.2d 294,

---

2. The rule in *Carpenter* was based on contract-law principles, not the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution applicable to the states through the Fourteenth Amendment. When the victim dies after the defendant has pleaded guilty to an offense less serious than homicide, that plea does not of itself bar the state from prosecuting the defendant for the homicide under double-jeopardy principles. See generally *State v. Thomas* (1980), 61 Ohio St.2d 254, 262, 15 O.O.3d 262, 400 N.E.2d 897, overruled on other grounds, *State v. Crago* (1990), 53 Ohio St.3d 243, 559 N.E.2d 1353 ("The courts have long held that where a fact necessary to the commission of one offense occurs after the defendant has been convicted of another offense, multiple prosecutions are not barred by the Double Jeopardy Clause"). The principal element of a homicide offense is the death of the victim, and that element is not part of an assault charge. The Double Jeopardy Clause provides: "[N]o person * * * shall be subject *for the same offence* to be twice put in jeopardy of life or limb." (Emphasis added.) If at the time of the guilty plea to the assault charge, the victim has not died, the final element of the homicide has not occurred, so the offenses are not "the same." See *Diaz v. United States* (1912), 223 U.S. 442, 449, 32 S.Ct. 250, 56 L.Ed. 500 (only at the time of the victim's death, "and not before, [is] it possible to put the accused in jeopardy for that [homicide] offense"). Accord *Brown v. Ohio* (1977), 432 U.S. 161, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187, fn. 7.

300. Because the defendant's constitutional rights are at stake in the plea process, the concerns underlying a plea agreement differ from and go beyond those of commercial contract law. *Carpenter*, 68 Ohio St.3d at 61, 623 N.E.2d 66.

{¶ 22} Our concern in *Carpenter* was to avoid the breaking of promises made by the prosecutor in the original plea agreement. *Carpenter*'s citation of cases from other states underscores the court's concern with enforcing the promises in a valid plea agreement. See id. at 61, citing *State v. Thomas* (1972), 61 N.J. 314, 294 A.2d 57, and *State v. Nelson* (1990), 23 Conn.App. 215, 579 A.2d 1104. *Thomas* relied on *Santobello,* which involved a concession by the state that a particular plea agreement had been made following plea bargaining with the defendant. *Santobello*, 404 U.S. at 258, 92 S.Ct. 495, 30 L.Ed.2d 427. The question in *Santobello* was whether that plea agreement could be enforced when a new assistant prosecutor sought a different sentence at the sentencing hearing, unaware of the earlier plea agreement. Id. at 259. The United States Supreme Court upheld the validity of the plea agreement. Id. at 262. *Thomas* quotes *Santobello* for this proposition: " '[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " 61 N.J. at 323, 294 A.2d 57, quoting *Santobello*, 404 U.S. at 262, 92 S.Ct. 495, 30 L.Ed.2d 427. See also *Nelson*, 23 Conn.App. at 221, 579 A.2d 1104 ( "specific performance of the [plea] agreement is the only appropriate remedy * * *"). These cases underscore the basis of the rule in *Carpenter*—effect must be given to the intention of the state and the defendant in their plea bargain, and courts should enforce what they perceive to be the terms of the original plea agreement.

C

{¶ 23} In order for a guilty plea to be a "negotiated guilty plea" within the meaning of *State v. Carpenter*, the record must show the existence of the elements of a contract (the plea agreement). The state maintains that there was no plea

agreement and that Dye effectively pleaded guilty to the indictment in the first case. Dye pleaded guilty to both counts of the first indictment, but only to the first of the three specifications attached to the aggravated vehicular assault charge. (To be sure, that specification not only imposed a mandatory prison term, as did the other specifications that were dismissed, but it included a mandatory permanent revocation of Dye's driver's license.) The state sought the maximum sentence, which was imposed. The state contends that Dye did not gain a reduced charge, a more favorable sentencing recommendation, or anything else, as one would expect from a negotiated plea agreement.

{¶ 24} This matter is not without some difficulty. However, a close examination of the record supports the conclusion that a negotiated plea existed within the meaning of *Carpenter*. Although the record is limited regarding the plea negotiations in Dye's first case, the transcript of the plea hearing reflects that some form of communication occurred before that hearing during which Dye notified the state that he would plead guilty to Counts One and Two and the first specification. Because Dye agreed to plead to this portion of the charges, the state recommended dismissal of the two remaining specifications. In addition, the state indicated that it had made an agreement with Dye to recommend the continuation of bond on the condition that Dye refrain from driving and using drugs or alcohol. The state contends that this latter part of the agreement at most related to the continuation of the bond and not the overall plea, but, although it is a close question, we view the agreement for continuation of the bond as corroborating the defendant's claim that his guilty plea was negotiated with the state. Dye's change of plea from not guilty to guilty and the state's later recommendation that the second and third specifications be dismissed, in conjunction with the agreement on continuation of bond, support the conclusion that Dye's guilty plea was a negotiated plea within the meaning of *Carpenter*. The state obtained a definite

prison term and avoided the uncertainties of trial. Dye gave up rights that may have resulted in acquittal.

{¶ 25} As the court of appeals concluded, any time a defendant enters a guilty plea, he or she will have relinquished the right to a trial at which the defendant could be acquitted, and the state gains the benefit of obtaining a conviction without having to go to trial. *State v. Dye*, 2009-Ohio-2949, at ¶ 28. We caution that our holding that a negotiated plea existed in Dye's case does not mean that every plea of guilty necessarily is the result of a negotiated plea agreement within the meaning of *Carpenter*. On this record, the evidence of plea negotiations and the parties' awareness of the gravity of the victim's injuries, together with the state's failure to reserve the right to prosecute for any later homicide charge, justify the conclusion that the state agreed to forgo further prosecution of Dye.

{¶ 26} Holding that Dye's plea was a negotiated plea is consistent with the rule in *Carpenter* and upholds important rights afforded to defendants generally. Both the state and Dye were aware of the grave nature of Arnold's injuries, and the record contains testimony that Arnold's death from those injuries was foreseeable. As in *Carpenter*, without an expressed reservation by the state of the right to prosecute for any later homicide charge, Dye had a reasonable expectation that his plea of guilty would end criminal prosecution based on this incident. Given the extreme nature of Arnold's injuries and the defendant's reasonable expectation that pleading guilty would end the criminal proceedings arising out of the incident, we conclude that if the state had wished to reserve the right to bring further charges in the event of Arnold's death, it would have so reserved on the record. Requiring the state to make this reservation under these circumstances places no unreasonable burden on prosecutors and ensures that defendants are fully aware of the consequences of their guilty pleas.

**{¶ 27}** Because Dye's 1999 plea was a "negotiated guilty plea" within the meaning of *Carpenter*, the state had a duty to "expressly reserve[] the right to file additional charges" if the victim dies of his injuries. Id., 68 Ohio St.3d 59, 623 N.E.2d 66, syllabus. Thus, *Carpenter* precluded the aggravated-vehicular-homicide charge in this case.

### III

**{¶ 28}** We hold that Dye's 1999 guilty plea to aggravated vehicular assault was a "negotiated plea" to a lesser offense within the meaning of *Carpenter. Carpenter* thus required the state to expressly reserve its right to bring a later homicide charge against Dye in the event that the victim died from injuries sustained in the aggravated vehicular assault to which Dye had pleaded guilty. Accordingly, the state was precluded from bringing the aggravated-vehicular-homicide charge against Dye after the victim died. We affirm the judgment of the court of appeals.

Judgment affirmed.

PFEIFER, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

LUNDBERG STRATTON, J., dissents.

BROWN, C.J., not participating.

_____

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 29}** I respectfully dissent. For the reasons that follow, I would hold that Dye's original guilty plea was not a "negotiated guilty plea" within the meaning of *State v. Carpenter* (1993), 68 Ohio St.3d 59, 623 N.E.2d 66, syllabus, and accordingly, his conviction for aggravated vehicular homicide under R.C. 2903.06(A)(1)(a) is not barred.

**{¶ 30}** At the outset, the holding in *Carpenter* is not compelled by the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution. The Double Jeopardy Clause provides: "[N]o person * * *

shall be subject for the same offence to be twice put in jeopardy of life or limb" and generally bars a successive prosecution for the "same" offense. See *Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306; *Gavieres v. United States* (1911), 220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489.[3] The principal element of a homicide offense is the death of the victim, and that element is not part of an assault charge. If at the time of the guilty plea to the assault charge, the victim has not died, the final element of the homicide charge has not occurred. See *Diaz v. United States* (1912), 223 U.S. 442, 449, 32 S.Ct. 250, 56 L.Ed. 500 (only at the time of the victim's death, "and not before, [is] it possible to put the accused in jeopardy for that [homicide] offense"). Accord *Brown v. Ohio* (1977), 432 U.S. 161, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187, fn. 7.

{¶ 31} Thus, when the victim dies after the defendant has pleaded guilty to an offense other than homicide, that plea does not of itself bar the state under double jeopardy principles from prosecuting the defendant for the homicide. See generally *State v. Thomas* (1980), 61 Ohio St.2d 254, 262, 15 O.O.3d 262, 400 N.E.2d 897, overruled on other grounds, *State v. Crago* (1990), 53 Ohio St.3d 243, 559 N.E.2d 1353 ("The courts have long held that where a fact necessary to the commission of one offense occurs after the defendant has been convicted of another offense, multiple prosecutions are not barred by the Double Jeopardy Clause").

{¶ 32} Instead, the basis for our concern for the defendant's expectation that he would not face additional prosecution was the "negotiated guilty plea." *Carpenter*, 68 Ohio St.3d 59, 623 N.E.2d 66, syllabus. *Carpenter* noted that the guilty plea had followed "plea negotiations with the state." Id. at 60. The opinion

---

3. In determining whether an offense is the "same" for double-jeopardy purposes, courts employ the "same elements" test of *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180, 76 L.Ed. 306. The same-elements test inquires as to whether each offense contains an element not included in the other: if not, they are the "same offence," and the Double Jeopardy Clause bars successive prosecution. *United States v. Dixon* (1993), 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556.

does not describe the substance of the plea agreement, but the court observed that Carpenter did not plead guilty to felonious assault, the crime charged in the indictment, but instead to attempted felonious assault, a lesser included offense of felonious assault. Id. Additionally, Carpenter was sentenced to the minimum prison term for attempted assault, and the court noted that the "state had agreed to recommend" that minimum sentence. Id. The lesser charge, combined with the state's favorable sentencing recommendation, indicated that a negotiated plea agreement had been reached in that case.

{¶ 33} I agree with the cases cited by the majority. However, I believe that their application to this case merits a different result. In this case, the state maintains that there was no plea agreement and that Dye effectively pleaded guilty to the indictment in the first case. Dye pleaded guilty to both counts of the first indictment. While he pleaded guilty only to the first of the three specifications attached to the charge of aggravated vehicular assault, that specification carried the most serious consequences for the defendant. It not only imposed a mandatory prison term (as did the other specifications that were dismissed), but it included a mandatory permanent revocation of Dye's driver's license. Further, the dismissal of the other two specifications did not affect Dye's sentence.

{¶ 34} The state sought the maximum sentence, which was imposed. The state contends that Dye did not gain a reduced charge, a more favorable sentencing recommendation, or anything else that one would expect from a negotiated plea agreement. Dye, on the other hand, contends that the dismissal of two of the three specifications shows that there was a negotiated plea agreement. He also argues that the state's comments to the effect that the prosecutor had assumed that Dye's bond would be continued pending sentencing (and that he had so represented to Dye and his counsel) show that a negotiated plea existed, because the trial judge had been prepared to revoke Dye's bond.

{¶ 35} The record does not contain the details of a plea agreement. However, Dye essentially pleaded guilty to the crimes charged. The state requested a maximum sentence, which was imposed. There was no negotiated reduced plea or plea bargain. The dismissal of the two specifications to the charge of aggravated vehicular assault did not result in a reduced sentence. Dye received no more lenient a sentence than he would have if he had been found guilty at trial.

{¶ 36} The fact that there is a written entry memorializing defendant's guilty plea is not dispositive of the characterization of the plea as a "negotiated guilty plea." The guilty plea form's recitation that "No promises other than those which are part of this plea agreement have been made" does not prove a "negotiated guilty plea" within the meaning of *Carpenter*. The written entry is on a form used for guilty pleas. Thus, the typed words "plea agreement" that appeared as part of the form do not suffice of themselves to satisfy *Carpenter*'s requirement of a negotiated guilty plea.

{¶ 37} The record regarding the continuation of bond does not unequivocally support appellee's position. The judge inquired of the assistant prosecutor about continuation of the bond: "Had you made an agreement?" The prosecutor responded: "I had assumed that bond was continued. We had represented to the Defendant that that would happen." The judge then asked the prosecutor: "You would recommend that?" and the prosecutor replied affirmatively. Upon being asked by the judge whether he had been involved with this case previously, the prosecutor responded: "Yes. That's what we had agreed to with the same conditions, one, no driving, and two, no drug and alcohol use pending the presentence report. We are also asking that a victim impact statement be ordered." The court then continued the bond for Dye. At most, this brief discussion shows an agreement with regard to the continuation of bond pending sentencing on the terms earlier provided. And a bond is not part of a sentence. A

bond only provides assurance that the defendant will appear for trial. When considered with the substance of the plea—essentially pleading guilty to the offense charged—and the state's sentencing recommendation of the maximum sentence, the trial court's conclusion that Dye's plea was not a "negotiated guilty plea" within the meaning of *Carpenter* is not error.

{¶ 38} I agree with the court of appeals that any time a defendant enters a guilty plea, he or she will have relinquished the right to a trial at which the defendant could be acquitted, and the state gains the benefit of obtaining a conviction without having to go to trial. *State v. Dye*, Lake App. No. 2008-L-106, 2009-Ohio-2949, at ¶ 28. But to hold that this detriment to the defendant and benefit to the state—which will be true of every guilty plea—amounts to a negotiated plea agreement under *Carpenter* is to read that case's holding too broadly. Under that reading, any guilty plea would be considered "negotiated." That is not what *Carpenter* held. Instead, *Carpenter* addresses those guilty pleas in which both the state and the defendant understand at the time of the agreement that the state does not intend to seek further prosecution of the defendant for the incident, even if the victim later dies from injuries suffered from the incident. Not every guilty plea will satisfy that condition.

{¶ 39} Because Dye's 1999 plea was not a "negotiated guilty plea" within the meaning of *Carpenter*, I believe that the state had *no* duty to expressly reserve the right to file additional charges in the event of the death of the victim. Accordingly, I would hold that the state was not precluded from bringing the aggravated-vehicular-homicide charge against Dye after the victim died. I respectfully dissent.

---

Charles E. Coulson, Lake County Prosecuting Attorney, and Teri R. Daniel, Assistant Prosecuting Attorney, for appellant.

Blakemore, Meeker & Bowler Co., L.P.A., and Michael B. Bowler, for appellee.

_____