[Cite as *State v. Mohamed*, 2021-Ohio-3643.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2020 CA 00053 |
| | : | |
| MOHAMED A. MOHAMED | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Licking County Court of
Common Pleas, Case No. 2019 CR
00718

JUDGMENT: AFFIRMED IN PART; REVERSED AND
REMANDED IN PART

DATE OF JUDGMENT ENTRY: October 8, 2021

APPEARANCES:

For Plaintiff-Appellee: For Defendant-Appellant:

WILLIAM C. HAYES JAMES A. ANZELMO
LICKING COUNTY PROSECUTOR 446 Howland Dr.
Gahanna, OH 43230
PAULA M. SAWYERS
ASSISTANT PROSECUTING ATTORNEY
20 S. Second St., 4th Floor
Newark, OH 43055

*Delaney, J.*

{¶1} Defendant-Appellant Mohamed A. Mohamed appeals his conviction and sentence for Tampering with Evidence and Vandalism by the Licking County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

### Rear End Accident with a Car and a Building

{¶2} On March 13, 2019, Defendant-Appellant Mohamed A. Mohamed was involved in a minor rear end traffic accident with another car, which caused minimal damage to Mohamed's vehicle and the other car. Witnesses observed Mohamed and the other driver exchange information, and the other driver appeared to take photos of the damage with his cell phone. The other driver then left the scene.

{¶3} After the other driver left the scene, police officers responded to the report of an accident around 12565 National Road in Pataskala, Licking County, Ohio. The officers spoke to Mohamed who informed them that a car had rear ended him and then took off. The officers noted that Mohamed's vehicle appeared to have struck more than just another vehicle due to the heavy rear end damage.

{¶4} Shortly thereafter, the police officers were notified that Mohamed had backed his vehicle into a building located at 12565 National Road approximately three times and then left the scene. Officers were able to obtain the photos taken by the other driver in the original accident, which showed only minor damage to Mohamed's car after the original accident. There was substantial damage to the building amounting to $7,200 for exterior repair and debris removal. Mohamed admitted to being in the area of the damaged building.

**Licking County Municipal Court Proceedings**

{¶5} On March 13, 2019, Mohamed was arrested and charged with the first-degree misdemeanor offense of hit/skip involving realty in violation of R.C. 4549.03. He entered a plea of not guilty to the charge in the Licking County Municipal Court. The matter was set for a jury trial.

{¶6} Mohamed entered a change of plea to guilty. On May 23, 2019, the Licking County Municipal Court held a change of plea hearing where it accepted the plea and moved directly to sentencing. It imposed a sentence of 120 days incarceration with 119 days suspended and one day jail time credit; one year probation; 100 hours of community service; and six months driver's license suspension. (Judgment Entry, May 23, 2019, Licking County Municipal Court, Case No. 19 TRD 2559). The municipal court ordered that restitution be held in abeyance for further review and hearing.

{¶7} The continued hearing was held on June 18, 2019. Mohamed did not appear for the hearing. The municipal court found the State presented testimony and documents in support of "restitution amount net of insurance coverage." It ordered restitution in the amount of $1,000 to be paid through adult probation. (Judgment Entry, June 18, 2019, Licking County Municipal Court, Case No. 19 TRD 2559).

**Common Pleas Proceedings**

{¶8} On September 12, 2019, Mohamed was indicted by the Licking County Grand Jury on one count of tampering with evidence, a third-degree felony in violation of R.C. 2921.12(A)(1), and one count of vandalism, a fifth-degree felony in violation of R.C. 2909.05(B)(1)(a) based on the events that occurred on March 13, 2019. Mohamed entered a not guilty plea to the charges.

### Motion to Dismiss

{¶9} Mohamed filed a Motion to Dismiss on January 6, 2020. In his motion, he argued the felony charges should be dismissed because Mohamed already plead and was found guilty by the Licking County Municipal Court to the charge of hit/skip involving realty, which arose out of the same incident and set of facts. The State, Mohamed alleged, failed to expressly reserve the right to bring further charges against him when he entered his plea and was found guilty by the Licking County Municipal Court. Mohamed had a reasonable belief at the time of his plea that it would have the effect of terminating the incident and no further charges would be brought. In support of his argument, Mohamed cited to *State v. Carpenter*, 68 Ohio St.3d 59, 623 N.E.2d 66 (1993), for the proposition that when a court accepts a negotiated plea, the State is precluded from prosecuting the defendant for additional charges unless the State expressly reserves the right to file additional charges on the record at the time of the defendant's plea. In support of his motion, he submitted as exhibits the Licking County Sheriff Department's crash report, the Licking County Sheriff Department's field case report, and a copy of the Licking County Municipal Court docket for Case No. 19 TRD 2559.

{¶10} The State filed its response to the Motion to Dismiss on January 23, 2020. It argued the holding in *State v. Carpenter* was inapplicable to the matter because the record in the Licking County Municipal Court proceedings did not show that Mohamed changed his plea based on a negotiated plea agreement with the State. It provided the trial court with exhibits from the municipal court proceedings, including the video of the Mohamed's change of plea hearing and the filed entries related to Mohamed's change of plea. The State argued the facts in *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807,

806 N.E.2d 542, were on point with the circumstances of Mohamed's plea. There was no evidence that any promises were made to Mohamed that his change of plea to guilty in the municipal court proceedings would preclude subsequent felony charges. Further, after applying the "same elements test" to the three charges resulting from the incident, double jeopardy did not bar prosecution.

{¶11} The trial court denied the Motion to Dismiss on February 4, 2020. It found the State did not reserve the right to pursue further charges, but Mohamed did not bargain for a release from further charges resulting out of the incident. The trial court further applied the same elements test to the charges of hit/skip involving realty, tampering with evidence, and vandalism. It found no similar elements between the three charges, and none were the lesser-included offenses of the others.

<u>Change of Plea and Sentencing</u>

{¶12} On June 9, 2020, Mohamed changed his plea to no contest to the charges of tampering and vandalism. The Admission of No Contest filed on June 9, 2020 stated in pertinent part: "Defendant will file appeal of denial of motion to suppress and no additional charges stemming from this incident." A change of plea hearing was held where the trial court accepted Mohamed's change of plea to no contest and found him guilty of the charges. The sentencing hearing was deferred for the completion of a presentence investigation.

{¶13} The sentencing hearing was held on August 4, 2020 with the Sentencing Entry journalized the same day. At the sentencing hearing, Mohamed requested the trial court impose community control sanctions, rather than a jail term. The trial court found that Mohamed did not complete his presentence investigation packet. It also found that

Mohamed had been charged with theft in March 2019, had two drunk driving charges, and incurred a charge of theft while released on bond in the present case. The trial court sentenced Mohamed to 15 months in prison for tampering with evidence and 12 months in prison for vandalism, to be served concurrently. While the damages to the building were estimated at $7,200, the State asked for $1,000 in restitution, which was the amount of the insurance deductible. Mohamed argued that restitution was ordered in the municipal court case, but he did not know the amount. The trial court ordered Mohamed pay $7,200 in restitution.

**Anders**

{¶14} A Notice of Appeal was filed on September 2, 2020. Original appellate counsel filed a brief pursuant to *Anders v. California,* 386 U.S. 738, rehearing den., 388 U.S. 924. By judgment entry filed March 4, 2021, this Court found a meritorious issue existed as to whether the trial court erred in overruling Mohamed's motion to dismiss the indictment based on double jeopardy grounds. We allowed appellate counsel to withdraw and ordered the trial court to appoint replacement appellate counsel.

{¶15} It is from this factual and procedural history that Mohamed now appeals.

**ASSIGNMENTS OF ERROR**

{¶16} Mohamed raises three Assignments of Error:

{¶17} "I. THE TRIAL COURT ERRED BY DENYING MOHAMED'S MOTION TO DISMISS THE FELONY CHARGES OF VANDALISM AND TAMPERING WITH EVIDENCE BECAUSE THE CONVICTIONS FOR THOSE CHARGES VIOLATED THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND BECAUSE MOHAMED WAS PREVIOUSLY

CONVICTED, PURSUANT TO A PLEA BARGAIN, OF A CHARGE STEMMING FROM THE INCIDENT GIVING RISE TO THE FELONY CHARGES.

{¶18} "II. THE TRIAL COURT ERRED WHEN IT SENTENCED MOHAMED TO PRISON, INSTEAD OF COMMUNITY CONTROL, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION.

{¶19} "III. THE TRIAL COURT UNLAWFULLY ORDERED MOHAMED TO PAY RESTITUTION, IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE TO THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

## ANALYSIS

### I. Double Jeopardy

{¶20} In his first Assignment of Error, Mohamed contends the trial court erred in denying his motion to dismiss the tampering with evidence and vandalism charges as being in violation of his double jeopardy protections. We disagree.

{¶21} A de novo standard of review applies when an appellate court reviews the denial of a motion to dismiss an indictment on the grounds of double jeopardy. *State v. Mullins*, 5th Dist. Fairfield No. 12 CA 17, 2013-Ohio-1826, ¶ 13 citing *State v. Betts*, 8th Dist. Cuyahoga No. 88607, 2007-Ohio-5533, ¶ 20.

### No Evidence of a Negotiated Plea

{¶22} In support of his argument that his double jeopardy protections were violated when he was indicted on additional charges after he plead guilty to an offense arising out of the incident, Mohamed relies on *State v. Carpenter*, 68 Ohio St.3d 59, 623

N.E.2d 66 (1993). In *Carpenter*, the Ohio Supreme Court held: "The state cannot indict a defendant for murder after the court has accepted a negotiated guilty plea to a lesser offense and the victim later dies of injuries sustained in the crime, unless the state expressly reserves the right to file additional charges on the record at the time of the defendant's guilty plea." *Id.* at syllabus. The Supreme Court recently revisited *Carpenter* in *State v. Azeen*, 163 Ohio St.3d 447, 2021-Ohio-1735, 170 N.E.3d 864.

State v. Azeen

{¶23} In *Azeen*, the underlying facts took place in 1987, when Abdul Azeen shot two men. Azeen entered a plea of no contest to felonious assault to one of the victims and attempted murder of the other victim, who was paralyzed from the gunshot wound. *Id.* at ¶ 4. The trial court held a plea hearing where it conducted the plea colloquy affirming that Azeen intended to enter a no-contest plea. After the trial court accepted Azeen's plea, the State informed the trial court that the paralyzed victim would not improve and would continue to deteriorate but did not suggest the victim's injuries might be fatal or there was a possibility the State would bring additional charges in the event the victim died from his injuries. *Id.* at ¶ 7. The trial court found Azeen guilty and proceeded directly to sentencing. During sentencing, the State asked the trial court how the sentences were to be served, to which the trial court responded concurrently. *Id.* at ¶ 8.

{¶24} The paralyzed victim died in 2014 and the cause of death was determined to be from the gunshot wound and therefore, a homicide. *Id.* at ¶ 9. In 2016, the State indicted Azeen for aggravated murder based on the 1987 shooting. *Id.* at ¶ 10. Based on *State v. Carpenter, supra*, Azeen filed a motion to dismiss the 2016 indictment on the

grounds that it violated the terms of a negotiated plea agreement that Azeen claimed he entered into with the State in 1987. *Id.*

{¶25} The trial court held a hearing on the motion to dismiss where Azeen conceded that no explicit plea agreement appeared on the record. *Id.* at ¶ 11. He presented the transcript of the 1987 plea hearing which the trial court utilized to grant the motion to dismiss after determining all the elements of a contract existed. *Id.* at ¶ 13. The trial court found that Azeen's sentence was a result of discussions that had taken place off the record. *Id.* On appeal, the Eighth District affirmed. *Id.*

{¶26} The State appealed and the Supreme Court answered the question as to whether *Carpenter* applied to protect Azeen from further prosecution. The Supreme Court reviewed its judgment in *Carpenter*, where the Court considered whether a plea agreement barred a subsequent prosecution related to the same incident. In *Carpenter*, the defendant and the State negotiated a plea agreement under which the State would reduce the defendant's felonious assault charge in exchange for a guilty plea, even though it was known the victim of the assault was likely to die. *Id.* at ¶ 18 citing *Carpenter*, 68 Ohio St.3d at 60-62. The victim died and the State brought murder charges against the defendant. The *Carpenter* court concluded the plea agreement barred any further prosecution of the defendant for crimes arising out of the assault. *Id.* at ¶ 19.

{¶27} As part of its analysis in *Carpenter*, the Court deliberated over the nature of a plea agreement. "* * * [A] plea agreement sometimes may reflect a mutual understanding between the prosecutor and the defendant that the plea will finalize the entire prosecution related to a criminal incident." *Id.* at ¶ 17. The Court was concerned about breaking a promise made by the prosecutor in the original plea agreement, because

"'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled.'" *Id*. at ¶ 20 citing *Carpenter*, *supra* at 62 quoting *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.E.2d 427 (1971). Accordingly, the Court held that effect must be given to the intentions of the State and the defendant in their plea bargain by enforcing what the court perceives to be the terms of the original plea agreement. *Id*. at ¶ 20 citing *State v. Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, ¶ 22. To enforce the terms of the original plea agreement, the Court held in *Dye*, "* * * for a guilty plea to be a 'negotiated guilty plea' within the meaning of *State v. Carpenter*, the record must show the existence of the elements of a contract (the plea agreement)." *Azeen, supra* at ¶ 20 citing *Dye, supra* at ¶ 23. The takeaway from *Carpenter* and *Dye* was "that whether the state may bring additional charges against someone who has entered into a negotiated plea agreement depends on the scope of the agreement." *Azeen, supra* at ¶ 23.

{¶28} To determine the scope of the agreement, the court must consider what terms both parties reasonably understood to be included in the agreement. *Id*. at ¶ 23 citing *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542. In *Carpenter*, the Court examined the circumstances surrounding the plea agreement where it was known the victim's death was likely. The evidence showed the State had chosen to enter into the plea agreement and therefore, the defendant had reasonably expected that his plea would resolve the matter entirely and the prosecutor was fully aware that was the defendant's understanding. *Id*. at ¶ 19. The Court held that if the State wanted to retain

the option of bringing additional charges if the victim died, it should have made that an explicit part of the agreement. *Id.*

{¶29} Based on *Carpenter*, the Court looked to the record to determine whether a plea agreement existed between the State and Azeen. The parties in *Azeen* did not put any plea agreement on the record. The lower courts determined that Azeen's plea must have been negotiated because an off-the-record conversation had taken place before the plea hearing. *Id.* at ¶ 26. The Supreme Court agreed the record showed the trial court spoke with the parties before the plea hearing when the judge stated, "'*I have indicated to your attorney* that you will expect, under the circumstances presented here, I'm going to sentence you to three years actual incarceration and on top of that I'm going to sentence you to five to twenty-five years[,]'" but the Court rejected the conclusion that the trial court's reference demonstrated a negotiated plea. (Emphasis sic.) *Id.* at ¶ 26. Azeen noted that the State did not argue with the trial court to impose a harsher sentence, but the Court observed conversely that the State asked the trial court how the imposed sentence was to be served. The Court found the State's question suggested the sentence was not the product of an agreement between Azeen and the State. *Id.* at ¶ 29. The Court next held it was speculation, not evidence of a plea agreement, that Azeen's experienced trial counsel would have permitted him to enter a guilty plea without knowing the sentence. *Id.* at ¶ 31. The Court's review of the plea hearing showed it was devoid of any reference to a negotiated plea agreement, in violation of Crim.R. 11(F), which states, "[w]hen a negotiated plea of guilty or no contest to one or more offenses charged to one or more other or lesser offenses is offered, the underlying agreement upon which the plea is based shall be stated on the record in open court." The Court concluded:

The transcript of the plea hearing indicates that an off-the-record conversation took place regarding Azeen's sentence. As to the content of that conversation, we can only guess. Nothing on the record demonstrates that the state had entered into any plea agreement with Azeen. And in the absence of an agreement demonstrating that Azeen had been induced into offering his plea by a promise from the state (express or implied) not to further pursue the matter, the state is not barred on that ground from prosecuting Azeen for aggravated murder.

*Id.* at ¶ 38.

{¶30} Pursuant to *Carpenter*, *Dye*, and *Azeen*, this Court must closely examine the record to determine whether a negotiated plea exists. Mohamed argues in his appellate brief that the prosecution entered into a plea agreement with Mohamed, and he established these facts through his motion to dismiss. In the motion's statement of facts, Mohamed stated, "On May 23, 2019, after conducting discovery and several pretrials, Defendant Mohamed waived a number of his constitutional rights and entered into a plea agreement with the City of Newark and plead to one count of Hit/Skip * * *." (Motion to Dismiss, Jan. 6, 2020). Mohamed attached the Licking County Sheriff's Department field case report based on the March 13, 2019 event as an exhibit to the motion to dismiss. The field case report lists "offenses" as:

| | STATUTE/DESCRIPTION | COUNTS | ATTEMPTS (SIC) |
|---|---|---|---|
| 01 | 2909.06 Criminal Damaging | 1 | Committed |
| 02 | 2921.31 Obstructing Official Business | 1 | Committed |
| 03 | 4549.03 Hit Skip Involving Realty | 1 | Committed |

The Licking County Municipal Court docket for Case No. 19 TRD 2559 shows the "Section Code" as "4549.03 – HIT-SKIP (REALTY)." There are no other "Section Codes" listed in the docket as to Case No. 19 TRD 2559.

{¶31} The State provided the trial court with exhibits from Mohamed's proceedings in the Licking County Municipal Court: the change of plea entry, the video of the change of plea hearing, and the sentencing judgment entry. The change of plea form filed with the municipal court stated as follows:

> In the presence of my attorney, I hereby acknowledge and state that I have asked the Court for permission to withdraw my previously entered plea of not guilty and enter a plea of guilty to the charge of HIT/SKIP REALTY, a misdemeanor of the 1st degree, carrying a possible maximum penalty of a fine of up to $1,000, a jail sentence of 180 (days/months), and/or both. Also, _____.
>
> * * *
>
> I hereby state and understand the following:
>
> * * *
>
> [Mohamed's Initials] That there have been no promises made by my attorney or any person as an inducement to change my plea.
>
> * * *

(Change of Plea, May 23, 2019, Licking County Municipal Court, Case No. 19 TRD 2559). The State contended in its opposition to the motion to dismiss that there was no evidence in the record that Mohamed and the State entered into a negotiated plea agreement

where the State agreed it would not bring further charges in exchange for Mohamed's guilty plea to hit/skip involving realty.

{¶32} In its judgment entry denying the motion to dismiss, the trial court determined the State did not reserve the right to pursue further charges, but Mohamed did not bargain for the release of any further charges. Upon our review of the record, we find the facts of this case are similar to those of *Azeen*. The record presented by both parties shows that Mohamed, like Azeen, entered a plea but there is no competent, credible evidence of a negotiated plea agreement. The change of plea entry contained no references to a negotiated plea agreement between the State and Mohamed. The video of the plea hearing showed the municipal court judge, Mohamed, and his trial counsel in the courtroom. During the plea hearing and subsequent sentencing, there was no reference to any negotiated plea agreement between the State and Mohamed. The field case report suggests that Mohamed was originally charged with multiple offenses but the remaining evidence before the trial court in the form of a copy of the docket, change of plea entry, and video of the plea hearing make no reference to these charges, requiring the court to impermissibly guess as to the disposition of those charges. In the absence of an agreement demonstrating that Mohamed had been induced into offering his plea to hit/skip involving realty by a promise from the State (express or implied) not to further pursue the matter, the State is not barred on that ground from prosecuting Mohamed for tampering with evidence and vandalism.

### Reliance on His Plea in Municipal Court

{¶33} In its opposition to Mohamed's motion to dismiss, the State also argued that *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, rather than

*Carpenter, supra*, was on point with the circumstances surrounding Mohamed's prosecution. In *Zima*, the defendant pleaded no contest in municipal court to driving under the influence after the State agreed during plea negotiations to dismiss additional charges for driving under suspension, failure to yield, and failure to wear a seatbelt. Four days before the defendant entered her plea, the grand jury indicted her on two counts of aggravated vehicular assault and one count of driving under the influence. After sentencing in the municipal court, the defendant moved to dismiss the indictment, arguing the State was barred from prosecuting her following her conviction in municipal court.

{¶34} The Ohio Supreme Court explained in *Zima* that its holding in *Carpenter*, *supra*, was "essentially a synthesis of contract and criminal law in a particular factual setting." *Id*. at ¶ 11. The defendant's expectation in *Carpenter* that "his guilty plea would terminate the incident was inherently justified because the prosecutor and the court had jurisdiction over all the charges, both actual and potential, and because the negotiated guilty plea included the dismissal of all pending charges." *Id*. at ¶ 12. The Court further explained that "[i]n the absence of these or equivalent circumstances, * * * it would be exceedingly difficult to sustain a defendant's belief that no further charges will be brought or prosecuted." *Id*. Applying *Carpenter* to the facts in *Zima*, the Ohio Supreme Court concluded that the defendant could not reasonably have believed that no further charges would be brought. *Id*. at ¶ 14. At the time of her plea in municipal court, the Court noted the defendant had already been indicted and neither the municipal court nor the city prosecutor had the authority to dismiss the pending felony charges. *Id*. Acknowledging that the defendant may not have been aware of the indictment, the Court observed that "a defendant should be aware that a plea taken before a municipal judge with limited

criminal jurisdiction might not dispose of the matter fully." *Id.*, quoting *State v. Zima*, 8th Dist. Cuyahoga No. 80824, 2002-Ohio-6327, 2002 WL 31618556, ¶ 44 (Kilbane, J., concurring in part and dissenting in part). *See State v. Cooper*, 9th Dist. No. 29110, 2019-Ohio-770, 132 N.E.3d 1229, 2019 WL 1062459, ¶ 7.

{¶35} As discussed above, there is nothing in the record to indicate that during the municipal proceedings, Mohamed was promised that his guilty plea would resolve any other charges arising out of the incident. Under *Zima*, it was unreasonable for Mohamed to assume that his unnegotiated misdemeanor plea would resolve felony charges in the same county. *See State v. Mullins*, 5th Dist. Fairfield No. 12 CA 17, 2013-Ohio-1826, ¶ 27.

### Same Elements Test

{¶36} In its judgment entry denying the motion to dismiss, the trial court further found that Mohamed was not being successively prosecuted for the same offense. We agree.

{¶37} The Fifth Amendment to the United States Constitution provides that "[n]o person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb." Similarly, Section 10, Article I, Ohio Constitution provides, "No person shall be twice put in jeopardy for the same offense."

{¶38} In *State v. Best*, 42 Ohio St.2d 530, 533, 330 N.E.2d 421 (1975), the Ohio Supreme Court explained that "the fact that the indictment was brought in the name of the state of Ohio, and the other * * * charges in the name of the city * * *, does not affect the claim of double jeopardy. * * * [T]he state and the city are parts of a single sovereignty,

and double jeopardy stands as a bar to a prosecution by one, after an accused has been in jeopardy for the same offense in a prosecution by the other." *Zima, supra* at ¶ 17.

{¶39} To determine whether an accused is being successively prosecuted for the "same offense," the *Best* court adopted the "same elements" test pronounced in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and held:

> The applicable rule under the Fifth Amendment is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. A single act may be an offense against two statutes, and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

*Best* at paragraph three of the syllabus; *Zima, supra* at ¶ 18-19.

{¶40} In *State v. Thomas*, 61 Ohio St.2d 254, 259, 400 N.E.2d 897 (1980), overruled on other grounds in *State v. Crago*, 53 Ohio St.3d 243, 559 N.E.2d 1353 (1990), syllabus, the Court explained, "This test focuses upon the elements of the two statutory provisions, not upon the evidence proffered in a given case." Thus, the *Blockburger* test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Zima, supra* at ¶ 20 quoting *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

{¶41} In the instant case, Mohamed was first charged with hit/skip involving realty under R.C. 4549.03. The statute reads:

The driver of any vehicle involved in an accident resulting in damage to real property, or personal property attached to real property, legally upon or adjacent to a public road or highway immediately shall stop and take reasonable steps to locate and notify the owner or person in charge of the property of that fact, of the driver's name and address, and of the registration number of the vehicle the driver is driving and, upon request and if available, shall exhibit the driver's or commercial driver's license.

If the owner or person in charge of the property cannot be located after reasonable search, the driver of the vehicle involved in the accident resulting in damage to the property, within twenty-four hours after the accident, shall forward to the police department of the city or village in which the accident or collision occurred, or if it occurred outside the corporate limits of a city or village to the sheriff of the county in which the accident or collision occurred, the same information required to be given to the owner or person in control of the property and give the location of the accident and a description of the damage insofar as it is known.

{¶42} Mohamed was then indicted for tampering with evidence, in violation of R.C. 2921.12(A)(1). It states:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;

{¶43} Mohamed was also indicted with vandalism, in violation of R.C. 2909.05(B)(1)(a). The statute reads:

(B)(1) No person shall knowingly cause physical harm to property that is owned or possessed by another, when either of the following applies:

(a) The property is used by its owner or possessor in the owner's or possessor's profession, business, trade, or occupation, and the value of the property or the amount of physical harm involved is one thousand dollars or more;

{¶44} The trial court found that none of the three charges had any similar elements, and none were lesser-included offenses to the others. In comparing the three offenses under *Blockburger*, we find the trial court did not err in finding there was no violation of Mohamed's double jeopardy protections from successive prosecutions.

{¶45} Mohamed's first Assignment of Error is overruled.

## II. Sentencing

{¶46} In his second Assignment of Error, Mohamed contends the trial court erred when it imposed a prison sentence, rather than community control sanctions, upon Mohamed's conviction for tampering with evidence, a third-degree felony, and vandalism, a fifth-degree felony. He was sentenced to 15 months in prison for tampering with evidence and 12 months in prison for vandalism, to be served concurrently.

{¶47} R.C. 2953.08 governs appeals based on felony sentencing guidelines. Subsection (G)(2) sets forth this Court's standard of review as follows:

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶48} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶49} A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range." *State v. Morris*, 5th Dist. Ashland No. 20-COA-015, ¶ 90 quoting *State v. Dinka*, 12th Dist. Warren Nos. CA2019-03-022 and CA2019-03-026, 2019-Ohio-4209, ¶ 36.

{¶50} Here, Mohamed does not argue that his sentence is contrary to law, and we find that his sentence is within the statutory range for a third-degree felony and a fifth-degree felony. This Court is therefore without authority to disturb Mohamed's sentence absent a finding by clear and convincing evidence that the record does not support the trial court's findings under R.C. 2929.11 and 2929.12.

{¶51} In the instant case, the trial court was not required to sentence Mohamed to community control and the trial court was within its discretion to impose a prison term. The trial court heard arguments from Mohamed's counsel. It appeared the trial court was unable to review a presentence investigation report because Mohamed did not complete his portion of the report. However, Mohamed committed a new offense while on bond in the present case and he had a prior misdemeanor record for which he had been placed on probation. (T. 10-11). The trial court specified that his poor bond performance included failing to report on bond and testing positive for drugs. (T. 11). A review of the record shows the clear and convincing evidence supports the trial court's findings under R.C. 2929.11 and 2929.12.

{¶52} Mohamed's second Assignment of Error is overruled.

**III. Restitution**

{¶53} In his third Assignment of Error, Mohamed argues the trial court abused its discretion when it ordered him to pay $7,200 in restitution. For the following reasons, we agree, and therefore sustain this Assignment of Error.

{¶54} We review restitution orders under an abuse-of-discretion standard. *State v. Hodge*, 5th Dist. Muskingum No. CT2019-0038, 2020-Ohio-901, ¶ 51 citing *State v. Sheets*, 5th Dist. Licking No. 17 CA 44, 2018-Ohio-996, 2018 WL 1358039, ¶ 15, citing *State v. Cook*, 5th Dist. Fairfield No. 16-CA-28, 2017-Ohio-1503, 2017 WL 1436377, ¶ 8; *State v. Andrews*, 5th Dist. Delaware No. 15 CAA 12 0099, 2016-Ohio-7389, 2016 WL 6138888, ¶ 40. This Court has held that an order of restitution must be supported by competent and credible evidence from which the trial court can discern the amount of restitution to a reasonable degree of certainty. *Hodge* at ¶ 51 citing *Sheets, supra*, citing *State v. Spencer*, 5th Dist. Delaware No. 16 CAA 04 0019, 2017-Ohio-59, 2017 WL 90619, ¶ 44 (citations omitted); *State v. Frank*, 5th Dist. No. CT2017-0102, 2018-Ohio-5148, 127 N.E.3d 363, ¶ 64. Furthermore, a trial court abuses its discretion if it orders restitution in an amount that does not bear a reasonable relationship to the actual loss suffered. *Id.* (citations omitted).

{¶55} At sentencing for his convictions of tampering with evidence and vandalism, the trial court ordered Mohamed to pay restitution in the amount of $7,200. Prior to ordering restitution, the following dialogue took place:

MR. BURGESS: * * * We are asking for restitution in the amount of $1,000.

I believe damages in this case were $7,200, but the insurance deductible is only $1,000.

THE COURT: Well, the insurance company is entitled to restitution, also so – * * * So, what are the damages?

MR. BURGESS: So, it would be restitution in the amount of $1,000 to [M.R.], I believe, and then it would – the balance or – yes, the balance would be to that insurance company. * * *

* * *

MR. BURGESS: Seventy-two hundred dollars, Your Honor.

THE COURT: So, the total amount of damages is $8,200.

MR. BURGESS: No, Your Honor, 7,200.

THE COURT: Okay. So, the amount to the insurance company would be $6,200.

MR. BURGESS: Correct, Your Honor.

* * *

MR. DYE: Your Honor, this is the first I've heard about restitution. However, I would say that restitution was ordered in the Municipal Court case.

THE COURT: Okay.

MR. DYE: I don't know what that amount was –

THE COURT: Okay.

MR. DYE: -- but that has also been addressed already.

THE COURT: Well, as long as it's been paid, then we're fine. It can only be paid once.

(T. 8-10).

{¶56} Mohamed does not dispute that $7,200 was the amount damages to the building he hit on March 13, 2019. He argues the trial court abused its discretion by ordering restitution in the amount of $7,200 when the Licking County Municipal Court previously ordered him to pay $1,000 in restitution based on the same incident.

{¶57} In response to the motion to dismiss, Mohamed and the State provided the trial court with portions of the record from the Licking County Municipal Court in Case No. 19 TRD 2559. The May 23, 2019 municipal court judgment entry stated that, "Restitution held in abeyance for further review and hearing." The copy of the Licking County Municipal Court docket submitted with Mohamed's motion to dismiss showed that on June 18, 2019, the municipal court held a hearing on the issue of restitution. The docketing entry for June 18, 2019 summarized the court's entry which found the State presented testimony and documents in support of restitution amount "net of insurance coverage" and ordered restitution in the amount of $1,000. At the sentencing hearing, Mohamed's counsel informed the trial court that restitution had already been ordered by the Licking County Municipal Court, to which the trial court acknowledged, "it can only be paid once."

{¶58} Based on this record, we find there was insufficient evidence to support restitution in the amount of $7,200. R.C. 2929.18(1) states in pertinent part as to restitution:

Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. * * * If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an

amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court imposes restitution for the cost of accounting or auditing done to determine the extent of economic loss, the court may order restitution for any amount of the victim's costs of accounting or auditing provided that the amount of restitution is reasonable and does not exceed the value of property or services stolen or damaged as a result of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount.

* * *.

{¶59} In this case, the State presented evidence at the sentencing hearing that the damages to the building were $7,200 and the insurance deductible was $1,000. There was also evidence in the record, and broached by Mohamed's counsel at the sentencing hearing, that the Licking County Municipal Court had already ordered Mohamed to pay $1,000 in restitution as "net of insurance coverage" arising out of the damages to the building. In total, Mohamed has been ordered to pay restitution arising out of the March 13, 2019 incident in the amount of $8,200. R.C. 2929.18 states that "restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." It appears from this record that the restitution

ordered by the trial court in this case would exceed the economic loss for the damages to the building.

{¶60} We find insufficient evidence to support the $7,200 restitution order and grant Mohamed's third Assignment of Error and remand this matter for a restitution hearing. *State v. Hodge*, 5th Dist. Muskingum No. CT2019-0038, 2020-Ohio-901, 2020 WL 1170812, ¶ 54 citing *State v. LaFever*, 5th Dist. Morrow No. 2009CA0003, 2009-Ohio-5471, ¶ 28.

{¶61} Mohamed's third Assignment of Error is sustained, the restitution order is reversed and vacated, and the matter is remanded for a restitution hearing.

## CONCLUSION

{¶62} Mohamed's first and second Assignments of Error are overruled, and his third Assignment of Error is sustained. The judgment of the Licking County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded for further proceedings.

By: Delaney, J.,

Baldwin, P.J. and

Gwin, J., concur.